**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**BEACON HILL ASSET MANAGEMENT LLC, Defendant,**

and

**Beacon Hill Master, Ltd., Bristol Fund, Ltd., Safe Harbor Fund L.P., Safe Harbor Asset Management LLC, Milestone Plus Partner L.P., and Milestone Global Advisors L.P., Relief Defendants.**

No. 02CIV8855(LAK)(HBP).

United States District Court, S.D. New York.

Aug. 3, 2004.

Brian A. Ochs, Carlisle Perkins, David A. Kagan-Kans, David L. Kornblau, Joshua Ravitz, Kenneth R. Lench, Kevin O'Rourke, Melissa Lamb, Richard Simpson, William R. Baker, II, Washington, DC, for Plaintiff.

John David Tortorella, Kevin Marino, Marino & Associates, Newark, NJ, Matthew M. Oliver, Lowenstein Sandler PC, Roseland, NJ, Scott Edelman, Milbank Tweed Hadley & McCloy, New York, NY, Wendy E. Gerstmann, Kevin H. Marino, P.C., Newark, NJ, Douglas W. Van Essen, Heather A. Adams, Joseph Michael McLaughlin, Simpson Thacher & Bartlett LLP, New York, NY, Scott M. Berman, Friedman Kaplan Seiler & Adelman LLP, New York, NY, Lee T. Silver, Sarah E.D. Fazio, Stenger & Stenger, P.C., Grand Rapids, MI, Seth Marc Schwartz, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, Amy S. Winkelman, U.S. Atty., Newark, NJ, for Defendants.

## OPINION AND ORDER

PITMAN, United States Magistrate Judge.

### I. *Introduction*

This is an enforcement action in which the Securities and Exchange Commission ("SEC") alleges numerous violations of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* The matter has been referred to me to resolve certain, specific discovery disputes.

Currently before me is the SEC's motion to compel the production of documents withheld by defendant Beacon Hill Asset Management LLC ("BH") on the basis of the attorney-client privilege and work-product protection. For the reasons set forth below, the SEC's motion is granted in part and denied in part.

### II. *Facts*

#### A. *Events Giving Rise to the Present Action*

At all times relevant, BH was the investment manager of three hedge funds—Bristol Fund, Ltd., Safe Harbor Fund, LLP and Milestone Plus partners, L.P.—and a master fund through which BH conducted the trades of the three "feeder funds" (Declaration of David Kagan–Kans, Esq., dated December 24, 2003 ("Kagan–Kans Decl."), ¶ 2). According to BH's counsel, due to the drastic decline in mortgage rates during the summer of 2002, BH began to have concerns in September 2002 regarding the value of its portfolio, and in late September 2002 it compared its valuation of its portfolio against prices provided by a third party, Interactive Data Corporation ("IDC") (Declaration of John D. Tortorella, Esq., dated January 6, 2004 ("Tortorella Decl."), ¶ 2). "This analysis, completed on or about September 26, 2002 put [BH] in fear of imminent litigation" (Tortorella Decl. ¶ 2).

In addition, during September 2002, BH was engaged in discussions with Bear Stearns & Co., Inc. ("Bear Stearns") in an

effort to obtain financing; Bear Stearns was the prime broker through which BH traded (Kagan–Kans Decl. ¶ 3; Tortorella Decl. ¶ 3). As part of these discussions, BH represented to Bear Stearns that the net asset value of its portfolio was $756 million (Kagan–Kans Decl. ¶ 3). Bear Stearns subsequently prepared its own analysis of BH's portfolio which disclosed a value approximately $500 million lower than that claimed by BH; Bear Stearns provided this analysis to BH on or about October 1, 2002 (Kagan–Kans Decl. ¶¶ 4, 11; *see* Tortorella Decl. ¶ 3). BH subsequently attempted to reconcile Bear Stearns' valuation with its own, and BH provided this analysis to the SEC on October 3, 2002 (Kagan–Kans Decl. ¶¶ 4–5; Tortorella Decl. ¶ 4).

According to BH's counsel, "Between September 26 and October 8, [BH] performed a variety of quantitative analyses to determine whether there had been a loss in the Master Fund in September 2002. The analyses performed were clearly undertaken in anticipation of litigation" (Tortorella Decl. ¶ 5). BH does not attempt to identify which documents on its indices of with-held documents are in this category, nor does it provide any specific information regarding the preparation of any of the analyses. BH does not identify who performed each analysis, what instructions were given to the individuals who prepared those analyses, nor does it indicate where those instructions originated. In addition, BH provides no information regarding whether the analyses prepared between September 26 and October 8 were different in any respect from the valuation analyses BH would ordinarily perform. It appears that BH routinely performed month-end valuation analyses of its portfolio (*see* Kagan–Kans Decl. ¶ 6).

BH retained the firm of Milbank, Tweed, Hadley & McCloy LLC ("Milbank") as its litigation counsel on October 6, 2002 (Tortorella Decl. ¶ 6). Two days later, on October 8, 2002, BH reported to its investors that it had suffered losses estimated at 25% during the month of September (Kagan–Kans Decl. ¶ 2; Tortorella Decl. ¶ 8). On the following day, Bear Stearns contacted the SEC and advised that Bear Stearns believed BH had understated the amount of its loss (Tortorella Decl. ¶ 8). On Monday, October 11, 2002, the SEC commenced its investigation of BH (Tortorella Decl. ¶ 10). Although BH represented to the SEC that it was willing to meet with the SEC and make a presentation concerning the value of its portfolio, that meeting never took place (Kagan–Kans Decl. ¶ 9; Tortorella Decl. ¶ 10).

BH retained Andrew Davidson & Co., Inc. ("Davidson") on October 15, 2002 to serve as a consultant regarding valuation issues. BH prepared an unspecified number of valuations between October 15, and October 28, 2002 to assist Davidson (Tortorella Decl. ¶ 11).

One week after its initial public announcement regarding its losses, BH made a second announcement on October 17, 2002, stating that its losses were even greater than previously thought. This announcement stated, in pertinent part:

> Using a combination of Interactive Data Corporation (IDC) prices, valuations from our prime broker and dealer quotations, we have calculated that as of September 30, 2002, the Fund had losses of approximately 54% from the reported [net asset value] as of August 31, 2002. Utilizing these inputs, the analysis of the portfolio reflects that a portion of the Fund's losses occurred prior to August 31, 2002. These losses are already reflected in the loss figure described above.
>
> In the current environment, we believe that its in the best interest of the Fund and its investors for the Fund to move towards an orderly liquidation of its portfolio over approximately the next six months and termination of the Fund thereafter. . . .

(Exhibit G to the Memorandum of Plaintiff Securities and Exchange Commission in Support of Motion to Compel Certain Documents that Defendant Beacon Hill Asset Management Claims to Be Privileged, dated December 24, 2003 ("SEC Opening Memo")).

### B. Proceedings to Date and the Present Dispute

The SEC commenced this action on November 7, 2002, alleging violations of the

federal securities laws and seeking injunctive and other relief.

On November 5, 2003, the Honorable Lewis A. Kaplan, United States District Judge, to whom this matter is assigned, ordered BH to produce its index of documents withheld on the ground of privilege no later than November 19, 2003. By that date BH provided the SEC with four indices listing more than 3,000 documents.

In the present motion, the SEC challenges BH's with-holding of four categories of documents: (1) documents generated after September 26, 2002 regarding the repricing of BH's portfolio; (2) allegedly privileged documents that the SEC argues are not described in sufficient detail; (3) documents that are attachments to communications with counsel and that do not appear to be independently privileged, and (4) documents that were disseminated to third parties in a manner that operates as a waiver of the attorney-client privilege or work-product protection.

## III. *Analysis*

### A. *General Principals*

Before addressing the specific arguments made by the SEC, it will be helpful to review the general principals applicable to assertions of the attorney-client privilege and work-product protection.

#### 1. *Attorney–Client Privilege*

Since the only claims in this action are based on federal statutes, privilege issues are controlled by "principles of common law[.]" Fed.R.Evid. 501; *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 441 (S.D.N.Y.1995), *citing von Bulow v. von Bulow,* 811 F.2d 136, 141 (2d Cir.1987).

The elements of the attorney-client privilege are well settled:

"The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., supra,* 160 F.R.D. at 441, *quoting United States v. United Shoe Mach. Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950); *see United States v. Davis,* 131 F.R.D. 391, 398 (S.D.N.Y.1990). The privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States,* 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). There-fore, "[i]t is now [also] well established that the privilege attaches not only to communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., supra,* 160 F.R.D. at 441–42; *see also O'Brien v. Board of Educ.,* 86 F.R.D. 548, 549 (S.D.N.Y.1980); *SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508, 520–22 (D.Conn.1976).

" '[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship.' " *von Bulow v. von Bulow, supra,* 811 F.2d at 144, *quoting In re Grand Jury Subpoena Dated Jan. 4, 1984,* 750 F.2d 223, 224 (2d Cir.1984). Thus, the party seeking to invoke the privilege must establish all elements of the privilege. *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 470 (S.D.N.Y.1993) (collecting cases).

#### 2. *Work–Product Protection*

The applicability of the work-product doctrine is exclusively governed by federal law. *Bowne of New York City, Inc. v. AmBase Corp., supra,* 150 F.R.D. at 471.

The scope of the work-product doctrine is set forth in Fed.R.Civ.P. 26(b)(3):

[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Like the attorney-client privilege, the party asserting the protection of the work-product doctrine bears the burden of proof. *In re Grand Jury Subpoena Dated December 19, 1978*, 599 F.2d 504, 510 (2d Cir.1979).

In contrast to the attorney-client privilege, which is intended to encourage full disclosure by the client, the work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir.1998), *quoting Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). " '[A]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.' " *In re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 279 (S.D.N.Y.1995), *quoting United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

"[T]hree conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *In Re Grand Jury Subpoenas Dated December 18, 1981 & January 4, 1982*, 561 F.Supp. 1247, 1257 (E.D.N.Y.1982) (McLaughlin, J.). *Accord Weinhold v. Witte Heavy Lift, Inc.*, 90 Civ. 2096(PKL), 1994 WL 132392 at *2 (S.D.N.Y. April 11, 1994); 2 Michael C. Silberberg, Edward M. Spiro, *Civil Practice in the Southern District of New York*, § 15.04 at 15–13—15–14 (2d ed.2003).

The Court of Appeals for the Second Circuit has explained that the second element of this test does not limit the doctrine to documents prepared primarily or exclusively to assist in litigation:

The text of Rule 26(b)(3) does not limit its protection to materials prepared to assist at trial. To the contrary, the text of the Rule clearly sweeps more broadly. It expressly states that work-product privilege applies not only to documents "prepared ... for trial" but also to those prepared "in anticipation of litigation." If the drafters of the Rule intended to limit its protection to documents made to assist in preparation for litigation, this would have been adequately conveyed by the phrase "prepared ... for trial." The fact that documents prepared "in anticipation of litigation" were also included confirms that the drafters considered this to be a different, and broader category. Nothing in the Rule states or suggests that documents prepared "in anticipation of litigation" with the purpose of assisting in the making of a business decision do not fall within its scope.

*United States v. Adlman, supra*, 134 F.3d at 1198–99. Thus, the appropriate test for assessing the second element of the test is whether " 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.' " *United States v. Adlman, supra*, 134 F.3d at 1202, *quoting* 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2024 at 343 (2d ed.1994). *See also Rexford v. Olczak*, 176 F.R.D. 90, 91 (W.D.N.Y.1997) (" '[W]hether material is prepared "in anticipation of litigation" turns on

whether the preparing party had a unilateral belief that litigation was likely and whether that belief was reasonable.'"), *quoting Chiquita Int'l Ltd. v. M/V Bolero Reefer*, 93 Civ. 0167(LAP)(JCF), 1994 WL 263603 at *2 (S.D.N.Y. June 7, 1994); *Atlantic Richfield Co. v. Current Controls, Inc.*, 93–CV–0950E(H), 1997 WL 538876 at *2 (W.D.N.Y.Aug.21, 1997); *Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D. 143, 149 (D.N.J.1997); *Status Time Corp. v. Sharp Elec. Corp.*, 95 F.R.D. 27, 29 (S.D.N.Y. 1982) (" 'mere possibility of litigation' " is not sufficient to trigger work product protection).

### 3. The Requirement of an Index of Documents Withheld on the Ground of Privilege

Fed.R.Civ.P. 26(b)(5)[1] and Local Civil Rule 26.2[2] both require a party withholding documents on the basis of a privilege to prepare an index of the withheld documents. In order to satisfy the requirements of these rules, the index of documents withheld must, "as to each document, ... set[ ] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *Golden Trade, S.r.L. v. Lee Apparel Co.*, 90 Civ. 6291(JMC), 1992 WL 367070 at *5 (S.D.N.Y. Nov. 20, 1992). *See also Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F.Supp. 1429, 1439 (D.Del.1989) ("[A] party asserting work product protection must 'identify the

withheld documents with sufficient particularity that the opposing counsel can intelligently argue that the privilege ought not to apply.' "), *quoting Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494, 497 (D.Conn.1985).

Where a properly prepared index of withheld documents has been served, the withholding party's obligation to produce evidence to sustain its assertions of privilege should be limited to those elements of the privilege or protection challenged by the adversary. *ECDC Envtl. L.C. v. New York Marine & Gen. Ins. Co.*, 96 Civ. 6033(BSJ)(HBP), 1998 WL 614478 at *3–*4 (S.D.N.Y. June 4, 1998).

### B. The SEC's Specific Challenges

#### 1. Repricing/Valuation Documents

The SEC first seeks to compel production of 247 documents prepared by BH or its counsel between September 2, 2002 (Doc. 2996) and May 24, 2003 (Doc. 3082) that relate to the repricing of BH's portfolio that occurred primarily in September and October 2002.

Based on the descriptions set forth in BH's indices, the documents appear to fall into two subcategories: (1) documents that consist of textual communications regarding the repricing ("Textual Repricing Documents");[3] and (2) spreadsheets.[4] With respect to the Textual Repricing Documents, BH's index, for

---

1. Fed.R.Civ.P. 26(b)(5) provides:

 When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

2. Local Civil Rule 26.2 provides:

 (a) Where a claim of privilege is asserted in objecting to any means of discovery or disclosure ... and an answer is not provided on the basis of such assertion,

 (1) the attorney asserting the privilege shall identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

(2) the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

(A) for documents: (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other....

3. Documents in this category are scheduled in Appendix A, annexed hereto.

4. Documents in this category are scheduled in Appendix B, annexed hereto.

the most part, identifies the sender of the document, its recipient and any other individuals who received copies. Each spreadsheet withheld is identified as "Spreadsheet created at the request of counsel for the purpose of obtaining legal advice;" no information is provided regarding who prepared the document, who requested that the document be prepared and who received copies. BH asserts both the attorney-client privilege and work-product protection as to all documents in this category.

■ The SEC does not mount a substantial argument regarding the Textual Repricing Documents. Most of the SEC's argument is addressed to whether the documents in this category were prepared in anticipation of litigation. However, to the extent that the attorney-client privilege is asserted with respect to the Textual Repricing Documents, the SEC's argument is immaterial. The SEC makes no contention that the textual repricing documents do not constitute confidential communications between BH and its counsel, as proffered in BH's indices. In addition, the apparently textual nature of the Textual Repricing Documents is consistent with the privilege's requirement of a confidential communication. Admittedly, BH does not make a particularized showing demonstrating the applicability of the attorney-client privilege as to any of the Textual Repricing Documents. *Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 78 (S.D.N.Y.2003) (proponent of privilege must establish elements of the privilege as to each document individually). However, in the absence of a specific challenge, specifically addressing BH's assertion of the attorney-client privilege with respect to these documents, I do not believe any such showing is required. *ECDC Envtl. L.C. v. New York Marine & Gen. Ins. Co.*, *supra*, 1998 WL 614478 at *3–*4. Any other procedure would transform the requirement of providing an index of withheld documents into an obligation to provide evidence of every element of the privilege as to every document withheld.

■ The only colorable argument the SEC makes regarding the Textual Repricing Documents is that BH has waived its privilege regarding these documents based on its pub-

lic disclosures and its disclosures to the SEC. Specifically, the SEC argues that the following disclosures operate as a waiver:

> The various representations and disclosures include the following: (a) the October 8 e-mail to investors announcing a 25% loss from the NAV as of August 31, 2002, and attributing the loss to the large number of September re-financings and adverse price movements in the funds' "short" positions in U.S. Treasuries; (b) the October 17 e-mail to investors announcing that "[u]sing a combination of the Interactive Data Corporation prices, valuations from [Bear Stearns] and dealer quotations," the funds had suffered a loss of approximately 54% from the reported NAV as of August 31, 2002, including losses occurring "prior to August 31, 2002;" (c) disclosures through counsel to the Commission that the announced 54% loss included losses of 12% for each of July and August 2002; (d) disclosures to the Commission and to the Asset Alliance Corporation that the re-pricing of the portfolio using IDC prices, Bear Stearns prices and dealer quotations had been reviewed by an outside expert, A.M. Davidson, and that the expert had concluded that the numbers did not look unreasonable . . . ; and (e) the analysis attached to the October 3 e-mail produced to the Commission showing that Beacon Hill's re-valuation of the portfolio for the month-end September 2002, using prices obtained from IDC, Bear Stearns and perhaps others, resulted in losses from month-end August of approximately $240 million in the long positions held by the portfolio and losses of approximately $160 million in positions held in the short Treasuries and other hedge instruments.

(SEC Opening Memo. at 13–14).

To the extent that the SEC is basing its waiver claim on BH's disclosures to its shareholders, its argument fails in light of the Second Circuit's decision in *von Bulow v. von Bulow, supra*, 828 F.2d 94. In *von Bulow*, the Court of Appeals held that the defendant's acquiescence in his attorney's publication of a book disclosing some privileged communications did not result in a waiver of the privilege with respect to non-disclosed

communications because the disclosed communications were not being used unfairly in the course of a judicial proceeding.

"[T]he fairness doctrine" ... aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information. Under the doctrine the client alone controls the privilege and may or may not choose to divulge his own secrets. But it has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut. *Hunt v. Blackburn*, 128 U.S. 464, 470–71, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888). From that has grown the rule that testimony as to part of a privileged communication, in fairness, requires production of the remainder. *McCormick On Evidence* § 93, at 194–95 (2d ed.1972).

Yet this rule protecting the party, the factfinder, and the judicial process from selectively disclosed and potentially misleading evidence does not come into play when, as here, the privilege-holder or his attorney has made extrajudicial disclosures, and those disclosures have not subsequently been placed at issue during litigation. In fact, the cases finding, as the district court did here, implied waivers on account of fairness involved material issues raised by a client's assertions during the course of a judicial proceeding. *See, e.g., Hunt v. Blackburn*, 128 U.S. at 470–71, 9 S.Ct. at 127; *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 201 (2d Cir.), *cert. denied*, 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629 (1929); *Smith v. Alyeska Pipeline Serv. Co.*, 538 F.Supp. 977, 979 (D.Del.1982) ("A client ... may waive the privilege by deliberately injecting into the case the advice which he received from his attorney.") (emphasis added), *aff'd*, 758 F.2d 668 (Fed.Cir.1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985); *United States v. Aronoff*, 466 F.Supp. 855, 862 (S.D.N.Y.1979); *International Tel. & Tel. Corp. v. United Tel. Co. of Fla.*, 60 F.R.D. 177, 185–86

(M.D.Fla.1973) ("[I]f the client or his attorney at his instance takes the stand and testifies to privileged communications in part this is a waiver as to the remainder ... about the same subject"); *Beckette v. State*, 31 Md.App. 85, 355 A.2d 515, 521 (Md.Ct.Spec.App.1976) (client's decision to call attorney as witness waived attorney-client privilege).

\* \* \*

Applying the fairness doctrine, we hold therefore that the extrajudicial disclosure of an attorney-client communication—one not subsequently used by the client in a judicial proceeding to his adversary's prejudice—does not waive the privilege as to the undisclosed portions of the communication. Hence, though the district court correctly found a waiver by von Bulow as to the particular matters actually disclosed in the book, it was an abuse of discretion to broaden that waiver to include those portions of the four identified conversations which, because they were not published, remain secret.

828 F.2d at 101–02.

In this case, as in *von Bulow*, BH's extrajudicial disclosures are not being asserted in this litigation and fairness does not, therefore, require the disclosure of undisclosed analyses. Thus, BH's disclosures to its shareholders do not constitute as a waiver.

■ To the extent that the SEC argues that BH's disclosures to it result in a waiver, its argument fails because it is overly broad.

The principal case on which the SEC relies in support of this aspect of its motion is *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y.1996), in which the Honorable Michael H. Dolinger, United States Magistrate Judge, concluded that a corporation's disclosure to the SEC of an internal investigative report, in an effort to gain favorable treatment from the SEC, resulted in a waiver of the attorney client privilege regarding the employee interview notes from which the report was prepared. 168 F.R.D. at 472. In support of his conclusion, Magistrate Judge Dolinger relied on *In re Sealed Case*, 676 F.2d 793 (D.C.Cir.1982). In *Sealed Case*, the

Court of Appeals for the District of Columbia concluded that a company's participation in the SEC's voluntary disclosure and its submission to the SEC of a report in the hope of receiving lenient treatment from the SEC, operated as a waiver of the attorney-client privilege and work-product protection privileges with respect to documents that were necessary to verify the accuracy of the report and that were "clearly identified" in the report. 676 F.2d at 819, 824. Although *Kidder Peabody* and *Sealed Case* clearly held that the voluntary disclosure of reports to the SEC operated as a waiver of privilege with respect to the specific documents underlying the reports, neither case suggested that the voluntary disclosure operated as a broad, subject-matter waiver.

In contrast to the situation in *Kidder Peabody* and *Sealed Case*, the SEC here is not seeking the production of specific documents that bear on the veracity of any of BH's representations to it. To the contrary, the SEC has made no attempt to demonstrate a connection between BH's disclosures to it and the documents it seeks. Rather, the SEC is effectively claiming that any voluntary disclosure to or communication with it operates as total waiver of the attorney-client privilege with respect to all documents, regardless of whether they are directly related to the communications with the SEC. Since *Kidder Peabody* and *Sealed Case* teach only that a company's voluntary disclosures to the SEC is by implication, a waiver of privilege with respect to the specific information necessary to confirm the disclosures, the SEC's argument is not supported by either of these decisions.

Since the SEC has not demonstrated how the attorney-client privilege has been waived or is inapplicable to any of the Textual Pricing Documents, its motion to compel production of those documents should be denied.[5]

The spreadsheets, however, are another matter. The SEC's motion specifically challenged the sufficiency of BH's assertion that these documents were prepared in anticipation of litigation, and BH has offered no specific evidence to support its assertion of either the attorney-client privilege or work-product protection. To the extent that BH relies on the attorney-client privilege to protect the spreadsheets, its index and affidavit are woefully inadequate. The index does not identify who prepared the spreadsheets or the attorney to whom each was sent. Thus, the index fails to identify an essential element of the attorney-client privilege, namely the existence of an attorney-client communication. *See Golden Trade S.r.L. v. Lee Apparel Co., supra*, 1992 WL 367070 at *5 ("The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed."). The affirmation submitted in opposition to the SEC's motion does nothing to fill this evidentiary void.

To the extent that BH relies on work-product protection, its showing is also inadequate. BH offers no specific evidence as to any of the spreadsheets claimed to be protected by work product. It does not identify who prepared the spreadsheets, and it provides no information regarding the circumstances under which each spreadsheet was prepared that would support the assertion of work-product protection. *See Grinnell Corp. v. ITT Corp., supra*, 222 F.R.D. at 78 (proponent of privilege must establish elements of the privilege as to each document individually).

The only evidence BH offers to support its assertion of work-product protection is the following statement by its counsel: "Between

---

**5.** Although the SEC also argues that BH's invocation of the attorney-client privilege and work-product protection is subject to the crime-fraud exception, it makes no effort to show that there is probable cause to believe that any documents or communications were made in order to further the crime or fraud. *See In re Richard Roe, Inc.*, 168 F.3d 69, 70 (2d Cir.1999) (" 'a party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof' "); *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir.1986) (crime-fraud exception applies only "where there is probable cause to believe that the particular communication with counsel ... was *intended in some way to facilitate or to conceal the criminal activity*" (emphasis added)). Accordingly, I find that the exception has not been established.

September 26 and October 8, Beacon Hill performed a variety of quantitative analyses to determine whether there had been a loss in the Master Fund in September 2002. The analyses undertaken during this period were clearly in anticipation of litigation" (Tortorella Dec. ¶ 5). This conclusory and generalized statement is insufficient to discharge BH's burden. *In re Bonanno*, 344 F.2d 830, 833 (2d Cir.1965) (burden of establishing elements of a privilege "is not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed"); *accord von Bulow v. von Bulow, supra,* 811 F.2d at 146; *In re Grand Jury Subpoena dated January 4, 1984,* 750 F.2d 223, 225 (2d Cir.1984); *Aktiebolag v. Andrx Pharm., Inc.,* 208 F.R.D. 92, 103 (S.D.N.Y.2002).

Accordingly, the SEC's application to compel production of the Textual Pricing Documents (identified on Appendix A annexed hereto) is denied. The SEC's application to compel production of the spreadsheets (identified on Appendix B annexed hereto) is granted.

### 2. *Sufficiency of the Description in BH's Indices*

■ The SEC next challenges BH's withholding of 464 documents on the ground that they are not sufficiently described.

The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed. The focus is on the specific descriptive portion of the log, and not on the conclusory invocations of the privilege or work-product rule, since the burden of the party withholding documents cannot be "discharged by mere conclusory or ipse dixit assertions."

*Golden Trade, S.r.L. v. Lee Apparel Co., supra,* 1992 WL 367070 at *5 (citations omitted); *accord A.I.A. Holdings, S.A. v. Leh-*

*man Bros.,* 97 Civ. 4978(LMM)(HBP), 2002 WL 31385824 at *4 (S.D.N.Y. Oct. 21, 2002); *In re Copper Mkt. Antitrust Litig.,* 200 F.R.D. 213, 223 (S.D.N.Y.2001).

[T]ypically [privilege] logs will identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between the individuals listed in the log and the litigating parties, the maintenance of confidentiality and the reasons for any disclosures of the document to individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony.

*Bowne of New York City, Inc. v. AmBase Corp., supra,* 150 F.R.D. at 474; *accord United States v. Construction Prods., Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996); *A.I.A. Holdings, S.A. v. Lehman Bros., supra,* 2002 WL 31385824 at *4; *Asset Value Fund Ltd. P'ship v. Care Group, Inc.,* 97 Civ. 1487(DLC)(JCF), 1997 WL 706320 at *7 (S.D.N.Y. Nov. 12, 1997).

Of the 464 documents in this category challenged by the SEC, 174 are being ordered produced either because BH has failed to sustain its burden of demonstrating the applicability of a privilege or protection or because they are unprivileged attachments.[6] Accordingly, I have considered the adequacy of the privilege log only with respect to the 290 remaining documents. The SEC has not made individualized challenges to any of these documents setting forth the specific alleged deficiencies in the list. Accordingly, my review has been limited to the facial validity of the entries.

■ The vast majority of the remaining documents are identified as correspondence or e-mails seeking, transmitting or reflecting legal advice. I find this description to be sufficient. Although the subject matter of the legal advice is not disclosed, given the circumstances, I presume that the advice re-

---

**6.** The documents which the SEC challenges on the basis of an insufficient description but that are being ordered produced as a result of other defects in BH's assertion of a privilege or protection are listed on Appendix C, annexed hereto.

lated to potential claims that could be asserted against BH as a result of the precipitous decline in the value of its portfolio and BH's delay in disclosing this diminished value. To require BH to disclose additional information would come perilously close to requiring disclosure of the substance of the privileged communication.

■ A number of the documents withheld are described as transmitting or reflecting "communications" with counsel. I find this description to be insufficient to sustain an assertion of privilege. An attorney and client can have many communications which are neither privileged nor subject to work product protection, *e.g.*, correspondence advising of the date and time of meetings, correspondence transmitting documents, etc. A description consisting of "communications" or "communications with counsel" is insufficient to establish even the minimal showing required in a privilege log because it does not permit the adversary to make an intelligent assessment as to the applicability of a privilege. Other documents in this category are insufficiently described because the log does not identify the author and intended or actual recipients—required information under Local Civil Rule 26.2. One document is described as "Attachment—letter to investors" (Document 1937); this description does not even remotely suggest that any privilege or protection is applicable.

The documents that I conclude must be produced because they are either inadequately described or described in a way that does not suggest the applicability of a privilege or protection are listed in Appendix D, annexed hereto.

3. *Documents Withheld as Attachments to Privileged Documents*

Citing *Renner v. Chase Manhattan Bank,* 98 Civ. 0926(CSH), 2001 WL 1356192 at *5 (S.D.N.Y. Nov. 2, 2001); *Draus v. Healthtrust, Inc.,* 172 F.R.D. 384, 393 (S.D.Ind. 1997); *Pacamor Bearings, Inc. v. Minebea Co.,* 918 F.Supp. 491, 511 (D.N.H.1996); *P & B Marina, L.P. v. Logrande,* 136 F.R.D. 50, 56 (E.D.N.Y.1991), the SEC next argues that attachments to privileged communications that are not themselves within a privilege, are not protected from production. BH responds by claiming that many of the attachments are draft documents containing attorney comments and that such documents are privileged. *See In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032, 1037 (2d Cir.1984). BH does not identify which documents fall within this category. BH asserts no other basis for withholding the attachments.

■ BH is partially correct. Drafts of documents prepared by an attorney for subsequent transmission to third parties are protected by the attorney-client privilege only where the draft document contains confidential information communicated by the client to the attorney that is maintained in confidence. *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, supra,* 731 F.2d at 1037; *Softview Computer Prods. Corp. v. Haworth, Inc.,* 97 Civ. 8815(KMW)(HBP), 2000 WL 351411 at *15 (S.D.N.Y. Mar. 31, 2000); *ECDC Envtl. L.C. v. New York Marine & Gen. Ins. Co., supra,* 1998 WL 614478 at *10 (S.D.N.Y. June 4, 1998); *Asset Value Fund Ltd. Partnership v. Care Group, Inc., supra,* 1997 WL 706320 at *6; *In re Kidder Peabody Sec. Litig., supra,* 168 F.R.D. at 474; *Sequa Corp. v. Gelmin,* 91 Civ. 8675(CSH), 1994 WL 538124 at *3 (S.D.N.Y. Oct. 3, 1994); *United States Postal Serv. v. Phelps Dodge Ref. Corp., supra,* 852 F.Supp. at 162–63; *Bowne of New York City, Inc. v. AmBase Corp., supra,* 150 F.R.D. at 490. A draft is not privileged simply because it is prepared by an attorney. *Bowne of New York City, Inc. v. AmBase Corp., supra,* 150 F.R.D. at 490.

■ BH does not identify which of the attachments, if any, are drafts containing confidential information communicated by BH to counsel and maintained in confidence. In fact, BH has not provided information which, if credited, would sustain a claim of privilege with respect to any particular document withheld as an attachment. Since BH has not established any colorable basis for withholding the documents challenged as attachments, those documents should be produced.

The attachments that should be produced because BH has not shown they are otherwise privileged are listed in Appendix E.

### 4. *Documents Disclosed to Third Parties*

Finally, the SEC challenges 327 documents on the ground that any privilege or protection that attached to these documents has been waived by their disclosure to parties outside the protected relationship. Of these 327 documents, 189 documents have been ordered produced on other grounds. Accordingly, my review here is limited to the 138 documents remaining in this category. BH asserts both the attorney-client privilege and the work-product protection as to each of these documents.

■ The SEC argues that any disclosure outside of the privileged relationship results in a waiver of both the attorney-client privilege and work-product protection. The SEC's argument is incorrect. The consequence of disclosure to third parties on work-product protection is substantially different from the consequence of such disclosure on the attorney-client privilege. *In re Grand Jury*, 106 F.R.D. 255, 257 (D.N.H.1985); *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 929 (N.D.Cal.1976). Voluntary disclosure to a party outside the attorney-client relationship destroys the attorney-client privilege because it destroys the confidentiality of the communication. *von Bulow v. von Bulow, supra*, 828 F.2d at 102–03; *In re Horowitz, supra*, 482 F.2d at 81. Disclosure of work-product material, however, results in a waiver of the protection only when the disclosure is to an adversary or is made in a manner that materially increases the likelihood of disclosure to an adversary. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234–35 (2d Cir.1993); *In re Crazy Eddie Sec. Litig.*, 131 F.R.D. 374, 379 (E.D.N.Y.1990) ("[T]he [work-product] privilege protects information 'against opposing parties, rather than against all others outside a particular confidential relationship.' ... Counsel may therefore share work product ... with those having similar interests in fully preparing litigation against a common adversary."). *See generally* Edna Selan Epstein, *The At-torney–Client Privilege & the Work–Product Doctrine* 618–19 (4th ed.2001).

■ The third parties whose access allegedly vitiates the attorney-client and work-product protections are described by the SEC as follows:

1. **Don Seymour** from the Master Fund Board of Directors in the Cayman Islands. Mr. Seymour was not part of Beacon Hill and any document sent to him could not have been privileged.

2. **Mark Lewis Roderick Palmer, Emma London and Seamus Andrew from the Walkers law firm** in the Cayman Island. Counsel for the Commission has been informed by the Walkers law firm that it represented the Master Fund and the Bristol Fund, not Beacon Hill. Accordingly, documents authored by, received from or sent to anyone from the Walkers law firm are not properly subject to a claim of privilege by Beacon Hill.

3. **Thomas Bell** from the firm of **Simpson Thacher** has represented the Master Fund and the Bristol Fund, not Beacon Hill. Accordingly, any document sent to him is not properly subject to a claim of privilege by Beacon Hill.

4. **Michael Austin, John Benbow and Peter Anderson** were from the Bristol Fund, not Beacon Hill. Accordingly, documents authored by or exchanged with these Bristol Fund representatives are not properly subject to a claim of privilege by Beacon Hill.

5. **Steve Maffei**, we have been informed, is an outside accountant. When counsel for the Commission asked Beacon Hill's counsel the basis for asserting the privilege as to documents shown to Mr. Maffei, a statement was made that at some point after the Beacon Hill loss announcement, Maffei was brought in by someone to help understand [the] issues. The purported date of retention was unknown, as was the identity of the attorney that purportedly retained Mr. Maffei. This information and a copy of the retention letter were requested from Beacon Hill's counsel, but have not been received. Further, there are several documents listed as being shown to Maffei prior to the loss an-

nouncement. Accordingly, any document exchanged with Maffei is not subject to any claim of privilege by Beacon Hill.

(SEC Opening Memo at 25–26 (bold-face in original)).

The SEC describes BH as being the manager of Bristol Fund and describes the Master Fund as the fund through which BH conducted the trading of the Bristol Fund and to other "feeder" funds (SEC Opening Memo. at 3–4). On the basis of this characterization it appears that the interests of the Bristol Fund and the Master Fund are aligned with—and not adverse to—those of BH. Accordingly, even if I assume that disclosure to the aforementioned individuals is sufficient to breach the attorney-client relationship, the disclosure is insufficient to pierce the work-product protection because the disclosure did not make it more likely the documents would be disclosed to a party of adverse interest.

Since it does not appear that BH's disclosure of the withheld documents to the third-parties identified by the SEC was sufficient to breach work-product protection, the SEC's motion to compel documents in this category is denied to the extent that the documents in this category have not otherwise been ordered disclosed.

### 5. *The ACT! Contact List*

The final category of documents in issue is BH's ACT! Contact List.

 The ACT! Contact List is a printout from contact management software (Tortorella Dec. ¶ 15). The SEC argues that it should be produced because it was not scheduled as a privilege document until December 10, 2003, approximately three weeks after the November 19 deadline set by Judge Kaplan for producing indices of documents withheld on the ground of privilege. BH argues in response that because it did not print out the data until December 10, 2003, the list did not exist as of November 19 and could not, therefore, have been scheduled in accordance with the November 19 deadline set by Judge Kaplan.

BH's argument is frivolous. For more than thirty years, Fed.R.Civ.P. 34(a) has included data stored on electronic media as being subject to a Rule 34 request. The fact that the data has not been printed out does not mean that the document does not exist. Indeed, if BH's argument were meritorious, any party could avoid producing damaging documents through the simple expedient of storing them on electronic media and never printing them out.

Since BH did not schedule the ACT! Contact List in a timely manner, that document should also be produced.

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, the SEC's motion to compel production is granted in part and denied in part. Within ten (10) days of the date of the Order, Beacon Hill is directed to produce to the SEC the documents listed on Appendices B, C, D and E, annexed hereto and the ACT! Contact List.

| | |
|---|---|
| 211 | 2786 |
| 223 | 2787 |
| 225 | 2788 |
| 239 | 2789 |
| 240 | 2790 |
| 246 | 2791 |
| 471 | 2800 |
| 528 | 2801 |
| 2083 | 2802 |
| 2084 | 2806 |
| 2306 | 2807 |
| 2307 | 2808 |
| 2308 | 2809 |
| 2311 | 2810 |
| 2431 | 2811 |
| 2435 | 2813 |
| 2439 | 2816 |
| 2441 | 2817 |
| 2442 | 2818 |
| 2450 | 2819 |
| 2451 | 2820 |
| 2452 | 2821 |
| 2463 | 2823 |
| 2469 | 2855 |
| 2471 | 2858 |
| 2474 | |
| 2477 | |
| 2604 | |
| 2606 | |
| 2757 | |
| 2759 | |
| 2760 | |
| 2761 | |
| 2762 | |
| 2764 | |
| 2765 | |
| 2766 | |
| 2773 | |
| 2774 | |
| 2775 | |
| 2776 | |
| 2782 | |
| 2784 | |
| 2785 | |

APPENDIX B

| | | | |
|---|---|---|---|
| 2605 | 2985 | 3033 | 3079 |
| 2607 | 2986 | 3034 | 3080 |
| 2937 | 2987 | 3035 | 3082 |
| 2938 | 2988 | 3036 | 3083 |
| 2939 | 2989 | 3037 | 3084 |
| 2940 | 2990 | 3038 | 3085 |
| 2941 | 2991 | 3039 | 3086 |
| 2943 | 2992 | 3040 | 3087 |
| 2944 | 2993 | 3041 | 3088 |
| 2946 | 2994 | 3042 | 3089 |
| 2947 | 2995 | 3043 | 3090 |
| 2948 | 2996 | 3044 | 3092 |
| 2950 | 2997 | 3045 | 3093 |
| 2952 | 2998 | 3046 | 3095 |
| 2953 | 2999 | 3047 | 3096 |
| 2954 | 3000 | 3048 | 3097 |
| 2955 | 3001 | 3049 | 3099 |
| 2956 | 3002 | 3050 | 3101 |
| 2957 | 3003 | 3051 | 3102 |
| 2958 | 3004 | 3052 | 3103 |
| 2959 | 3005 | 3053 | 3104 |
| 2960 | 3006 | 3054 | 3105 |
| 2961 | 3007 | 3055 | 3106 |
| 2962 | 3008 | 3056 | 3107 |
| 2963 | 3009 | 3057 | 3108 |
| 2964 | 3010 | 3058 | 3109 |
| 2965 | 3012 | 3059 | 3110 |
| 2966 | 3013 | 3060 | 3111 |
| 2967 | 3014 | 3061 | 3112 |
| 2968 | 3015 | 3062 | 3113 |
| 2969 | 3016 | 3063 | 3114 |
| 2970 | 3017 | 3064 | 3115 |
| 2971 | 3018 | 3065 | 3117 |
| 2972 | 3019 | 3066 | 3118 |
| 2973 | 3020 | 3067 | 3120 |
| 2974 | 3021 | 3068 | 3121 |
| 2975 | 3022 | 3069 | 3122 |
| 2976 | 3023 | 3070 | 3124 |
| 2977 | 3024 | 3071 | |
| 2978 | 3026 | 3072 | |
| 2979 | 3027 | 3073 | |
| 2980 | 3028 | 3074 | |
| 2981 | 3029 | 3075 | |
| 2982 | 3030 | 3076 | |
| 2983 | 3031 | 3077 | |
| 2984 | 3032 | 3078 | |

## Appendix C

| | | | |
|---|---|---|---|
| 2937 | 2987 | 3035 | 3082 |
| 2938 | 2988 | 3036 | 3083 |
| 2939 | 2989 | 3037 | 3084 |
| 2940 | 2990 | 3038 | 3085 |
| 2941 | 2991 | 3039 | 3086 |
| 2943 | 2992 | 3040 | 3087 |
| 2944 | 2993 | 3041 | 3088 |
| 2946 | 2994 | 3042 | 3089 |
| 2947 | 2995 | 3043 | 3090 |
| 2948 | 2996 | 3044 | 3092 |
| 2950 | 2997 | 3045 | 3093 |
| 2952 | 2998 | 3046 | 3095 |
| 2953 | 2999 | 3047 | 3096 |
| 2954 | 3000 | 3048 | 3097 |
| 2955 | 3001 | 3049 | 3099 |
| 2956 | 3002 | 3050 | 3101 |
| 2957 | 3003 | 3051 | 3102 |
| 2958 | 3004 | 3052 | 3103 |
| 2959 | 3005 | 3053 | 3104 |
| 2960 | 3006 | 3054 | 3105 |
| 2961 | 3007 | 3055 | 3106 |
| 2962 | 3008 | 3056 | 3107 |
| 2963 | 3009 | 3057 | 3108 |
| 2964 | 3010 | 3058 | 3109 |
| 2965 | 3012 | 3059 | 3110 |
| 2966 | 3013 | 3060 | 3111 |
| 2967 | 3014 | 3061 | 3112 |
| 2968 | 3015 | 3062 | 3113 |
| 2969 | 3016 | 3063 | 3114 |
| 2970 | 3017 | 3064 | 3115 |
| 2971 | 3018 | 3065 | 3117 |
| 2972 | 3019 | 3066 | 3118 |
| 2973 | 3020 | 3067 | 3120 |
| 2974 | 3021 | 3068 | 3121 |
| 2975 | 3022 | 3069 | 3122 |
| 2976 | 3023 | 3070 | 3124 |
| 2977 | 3024 | 3071 | |
| 2978 | 3026 | 3072 | |
| 2979 | 3027 | 3073 | |
| 2980 | 3028 | 3074 | |
| 2981 | 3029 | 3075 | |
| 2982 | 3030 | 3076 | |
| 2983 | 3031 | 3077 | |
| 2984 | 3032 | 3078 | |
| 2985 | 3033 | 3079 | |
| 2986 | 3034 | 3080 | |

| | |
|---|---|
| 187 | 2696 |
| 275 | 2697 |
| 331 | 2699 |
| 370 | 2706 |
| 382 | 2717 |
| 729 | 2722 |
| 730 | 2727 |
| 731 | 2730 |
| 812 | 2731 |
| 861 | 2732 |
| 1114 | 2733 |
| 1177 | 2734 |
| 1189 | 2736 |
| 1433 | 2737 |
| 1602 | 2763 |
| 1605 | 2769 |
| 1821 | 2770 |
| 1937 | 2777 |
| 1987 | 2778 |
| 1993 | 2780 |
| 2035 | 2781 |
| 2037 | 2783 |
| 2038 | 2792 |
| 2080 | 2793 |
| 2158 | 2794 |
| 2163 | 2795 |
| 2164 | 2796 |
| 2165 | 2797 |
| 2174 | 2798 |
| 2192 | 2814 |
| 2322 | 2815 |
| 2341 | 2824 |
| 2397 | 2825 |
| 2406 | 2826 |
| 2407 | 2827 |
| 2415 | 2828 |
| 2424 | 2829 |
| 2440 | 2834 |
| 2531 | 2860 |
| 2551 | 2861 |
| 2613 | 2862 |
| 2614 | 2863 |
| 2651 | 2865 |
| 2674 | 2867 |
| 2684 | |
| 2685 | |

## Appendix E[7]

| | | | |
|---|---|---|---|
| 2 | 119 | 189 | 361 |
| 4 | 124 | 191 | 366 |
| 7 | 126 | 194 | 368 |
| 9 | 128 | 196 | 373 |
| 11 | 131 | 198 | 381 |
| 13 | 133 | 200 | 384 |
| 15 | 134 | 202 | 385 |
| 17 | 135 | 204 | 386 |
| 19 | 136 | 207 | 387 |
| 21 | 138 | 209 | 389 |
| 23 | 139 | 210 | 390 |
| 25 | 140 | 220 | 391 |
| 27 | 142 | 222 | 392 |
| 29 | 143 | 230 | 394 |
| 31 | 144 | 232 | 395 |
| 33 | 145 | 235 | 396 |
| 35 | 147 | 236 | 397 |
| 39 | 148 | 238 | 399 |
| 47 | 149 | 242 | 400 |
| 48 | 150 | 248 | 401 |
| 51 | 152 | 277 | 402 |
| 53 | 153 | 278 | 404 |
| 67 | 154 | 281 | 405 |
| 68 | 155 | 288 | 406 |
| 69 | 157 | 289 | 407 |
| 73 | 158 | 298 | 412 |
| 74 | 159 | 309 | 437 |
| 75 | 160 | 310 | 445 |
| 82 | 162 | 312 | 446 |
| 85 | 163 | 316 | 448 |
| 86 | 164 | 316 | 451 |
| 87 | 165 | 321 | 452 |
| 89 | 167 | 325 | 459 |
| 92 | 168 | 325 | 460 |
| 94 | 169 | 330 | 463 |
| 97 | 170 | 335 | 467 |
| 98 | 177 | 345 | 469 |
| 99 | 179 | 350 | 473 |
| 101 | 181 | 354 | 474 |
| 117 | 186 | 359 | 478 |

7. A number of the documents listed on BH indices are compound documents comprised of a primary document and an attachment. With respect to documents on this Appendix listed with the suffix "A," BH is directed to produce the attachment only.

| | | | |
|---|---|---|---|
| 479 | 557 | 621 | 691 |
| 480 | 559 | 623 | 693 |
| 481 | 560 | 624 | 695 |
| 483 | 561 | 625 | 697 |
| 485 | 563 | 626 | 698 |
| 486 | 564 | 627 | 700 |
| 487 | 565 | 629 | 701 |
| 489 | 566 | 630 | 703 |
| 490 | 567 | 631 | 705 |
| 492 | 569 | 632 | 709 |
| 496 | 570 | 633 | 711 |
| 498 | 572 | 635 | 712 |
| 500 | 573 | 636 | 713 |
| 501 | 574 | 637 | 728 |
| 503 | 575 | 638 | 733 |
| 504 | 576 | 639 | 734 |
| 506 | 578 | 640 | 735 |
| 510 | 579 | 641 | 740 |
| 512 | 580 | 642 | 742 |
| 513 | 581 | 643 | 744 |
| 516 | 583 | 644 | 746 |
| 517 | 584 | 645 | 747 |
| 519 | 585 | 647 | 748 |
| 520 | 587 | 648 | 750 |
| 522 | 588 | 649 | 752 |
| 523 | 590 | 650 | 754 |
| 526 | 591 | 651 | 756 |
| 527 | 593 | 652 | 757 |
| 530 | 595 | 653 | 758 |
| 532 | 597 | 654 | 759 |
| 533 | 599 | 655 | 761 |
| 535 | 600 | 657 | 762 |
| 537 | 601 | 658 | 763 |
| 539 | 602 | 661 | 764 |
| 540 | 604 | 664 | 766 |
| 541 | 605 | 667 | 767 |
| 542 | 606 | 669 | 768 |
| 544 | 607 | 671 | 769 |
| 545 | 609 | 672 | 771 |
| 546 | 610 | 673 | 772 |
| 547 | 611 | 675 | 773 |
| 548 | 612 | 679 | 774 |
| 549 | 613 | 681 | 776 |
| 550 | 615 | 683 | 788 |
| 552 | 616 | 684 | 790 |
| 553 | 617 | 686 | 792 |
| 554 | 619 | 688 | 793 |
| 555 | 620 | 690 | 794 |

| | | | |
|---|---|---|---|
| 795 | 962 | 1073 | 1183 |
| 796 | 964 | 1078 | 1184 |
| 797 | 965 | 1085 | 1185 |
| 798 | 967 | 1086 | 1186 |
| 799 | 968 | 1087 | 1187 |
| 800 | 974 | 1089 | 1191 |
| 801 | 975 | 1090 | 1193 |
| 802 | 977 | 1092 | 1194 |
| 803 | 978 | 1096 | 1198 |
| 804 | 981 | 1097 | 1199 |
| 806 | 983 | 1106 | 1204 |
| 807 | 984 | 1107 | 1205 |
| 808 | 988 | 1109 | 1209 |
| 828 | 989 | 1113 | 1211 |
| 831 | 992 | 1116 | 1212 |
| 833 | 993 | 1121 | 1213 |
| 844 | 994 | 1122 | 1215 |
| 846 | 995 | 1124 | 1217 |
| 848 | 997 | 1125 | 1220 |
| 855 | 999 | 1128 | 1221 |
| 856 | 1000 | 1129 | 1223 |
| 857 | 1001 | 1131 | 1224 |
| 858 | 1003 | 1132 | 1226 |
| 871 | 1004 | 1134 | 1228 |
| 872 | 1005 | 1135 | 1230 |
| 873 | 1006 | 1137 | 1232 |
| 881 | 1009 | 1138 | 1247 |
| 890 | 1012 | 1141 | 1249 |
| 891 | 1013 | 1142 | 1250 |
| 892 | 1014 | 1145 | 1251 |
| 893 | 1017 | 1147 | 1254 |
| 912 | 1018 | 1149 | 1256 |
| 916 | 1019 | 1151 | 1257 |
| 919 | 1022 | 1153 | 1258 |
| 923 | 1023 | 1154 | 1260 |
| 931 | 1024 | 1156 | 1263 |
| 933 | 1032 | 1158 | 1264 |
| 935 | 1034 | 1160 | 1265 |
| 941 | 1036 | 1161 | 1278 |
| 943 | 1041 | 1164 | 1280 |
| 945 | 1045 | 1166 | 1287 |
| 947 | 1046 | 1168 | 1289 |
| 951 | 1050 | 1169 | 1290 |
| 952 | 1051 | 1171 | 1291 |
| 956 | 1065 | 1172 | 1292 |
| 958 | 1068 | 1174 | 1294 |
| 959 | 1069 | 1176 | 1298 |
| 961 | 1072 | 1182 | 1300 |

| | | | |
|---|---|---|---|
| 1301 | 1408 | 1511 | 1694 |
| 1302 | 1409 | 1513 | 1696 |
| 1303 | 1411 | 1515 | 1697 |
| 1306 | 1413 | 1517 | 1699 |
| 1311 | 1415 | 1518 | 1700 |
| 1313 | 1417 | 1522 | 1704 |
| 1317 | 1419 | 1525 | 1705 |
| 1318 | 1421 | 1526 | 1706 |
| 1324 | 1424 | 1529 | 1708 |
| 1325 | 1425 | 1531 | 1709 |
| 1326 | 1432 | 1532 | 1710 |
| 1329 | 1438 | 1544 | 1714 |
| 1330 | 1439 | 1552 | 1716 |
| 1331 | 1440 | 1555 | 1717 |
| 1333 | 1441 | 1556 | 1718 |
| 1334 | 1442 | 1558 | 1719 |
| 1335 | 1445 | 1559 | 1720 |
| 1338 | 1447 | 1560 | 1721 |
| 1341 | 1448 | 1566 | 1722 |
| 1342 | 1450 | 1567 | 1723 |
| 1344 | 1451 | 1568 | 1725 |
| 1346 | 1453 | 1569 | 1726 |
| 1347 | 1454 | 1578 | 1727 |
| 1348 | 1456 | 1579 | 1728 |
| 1350 | 1457 | 1589 | 1729 |
| 1351 | 1459 | 1591 | 1730 |
| 1354 | 1460 | 1593 | 1731 |
| 1356 | 1461 | 1600 | 1732 |
| 1360 | 1462 | 1611 | 1733 |
| 1362 | 1464 | 1628 | 1734 |
| 1366 | 1468 | 1629 | 1735 |
| 1370 | 1469 | 1630 | 1737 |
| 1371 | 1471 | 1634 | 1738 |
| 1373 | 1474 | 1635 | 1739 |
| 1374 | 1475 | 1638 | 1740 |
| 1376 | 1476 | 1639 | 1741 |
| 1377 | 1477 | 1641 | 1742 |
| 1385 | 1479 | 1642 | 1743 |
| 1386 | 1482 | 1654 | 1744 |
| 1389 | 1484 | 1657 | 1745 |
| 1390 | 1489 | 1666 | 1746 |
| 1392 | 1492 | 1667 | 1747 |
| 1393 | 1495 | 1668 | 1748 |
| 1397 | 1498 | 1676 | 1750 |
| 1399 | 1501 | 1677 | 1751 |
| 1403 | 1502 | 1689 | 1752 |
| 1405 | 1504 | 1690 | 1753 |
| 1407 | 1505 | 1693 | 1754 |

| | | | |
|---|---|---|---|
| 1755 | 1813 | 1875 | 1947 |
| 1756 | 1815 | 1876 | 1948 |
| 1757 | 1817 | 1877 | 1953 |
| 1758 | 1819 | 1879 | 1954 |
| 1759 | 1822 | 1880 | 1956 |
| 1760 | 1824 | 1881 | 1957 |
| 1761 | 1825 | 1882 | 1958 |
| 1762 | 1826 | 1883 | 1959 |
| 1764 | 1827 | 1884 | 1960 |
| 1765 | 1828 | 1886 | 1962 |
| 1766 | 1829 | 1887 | 1964 |
| 1767 | 1830 | 1888 | 1965 |
| 1768 | 1832 | 1889 | 1966 |
| 1769 | 1833 | 1890 | 1970 |
| 1770 | 1834 | 1892 | 1971 |
| 1771 | 1835 | 1893 | 1972 |
| 1772 | 1836 | 1894 | 1973 |
| 1773 | 1837 | 1895 | 1975 |
| 1774 | 1838 | 1896 | 1977 |
| 1775 | 1839 | 1897 | 1978 |
| 1777 | 1840 | 1899 | 1979 |
| 1778 | 1842 | 1900 | 1980 |
| 1779 | 1843 | 1901 | 1982 |
| 1780 | 1844 | 1902 | 1983 |
| 1781 | 1845 | 1903 | 1984 |
| 1782 | 1847 | 1904 | 1985 |
| 1783 | 1848 | 1906 | 1989 |
| 1784 | 1849 | 1907 | 1990 |
| 1786 | 1850 | 1914 | 1991 |
| 1787 | 1851 | 1915 | 1992 |
| 1788 | 1853 | 1916 | 1995 |
| 1789 | 1854 | 1918 | 1996 |
| 1793 | 1855 | 1920 | 1997 |
| 1794 | 1856 | 1922 | 1998 |
| 1795 | 1858 | 1924 | 2000 |
| 1796 | 1859 | 1925 | 2001 |
| 1797 | 1860 | 1926 | 2002 |
| 1799 | 1861 | 1928 | 2003 |
| 1800 | 1863 | 1929 | 2007 |
| 1801 | 1864 | 1930 | 2009 |
| 1802 | 1865 | 1932 | 2015 |
| 1803 | 1866 | 1935 | 2017 |
| 1804 | 1868 | 1939 | 2019 |
| 1807 | 1869 | 1941 | 2021 |
| 1808 | 1870 | 1942 | 2023 |
| 1809 | 1872 | 1943 | 2025 |
| 1810 | 1873 | 1945 | 2027 |
| 1811 | 1874 | 1946 | 2029 |

| | | | |
|---|---|---|---|
| 2034 | 2235 | 2361 | 2464 |
| 2040 | 2236 | 2363 | 2466 |
| 2042 | 2238 | 2364 | 2468 |
| 2044 | 2239 | 2366 | 2476 |
| 2046 | 2240 | 2367 | 2482 |
| 2048 | 2241 | 2368 | 2484 |
| 2050 | 2243 | 2369 | 2485 |
| 2086 | 2244 | 2370 | 2492 |
| 2087 | 2245 | 2372 | 2493 |
| 2088 | 2246 | 2373 | 2495 |
| 2089 | 2248 | 2374 | 2496 |
| 2090 | 2250 | 2375 | 2507 |
| 2091 | 2251 | 2377 | 2513 |
| 2092 | 2253 | 2378 | 2514 |
| 2134 | 2256 | 2379 | 2516 |
| 2138 | 2258 | 2380 | 2518 |
| 2161 | 2260 | 2381 | 2519 |
| 2167 | 2261 | 2382 | 2521 |
| 2169 | 2262 | 2383 | 2525 |
| 2170 | 2264 | 2386 | 2527 |
| 2176 | 2275 | 2387 | 2529 |
| 2182 | 2276 | 2388 | 2530 |
| 2186 | 2277 | 2389 | 2544 |
| 2187 | 2290 | 2391 | 2553 |
| 2189 | 2291 | 2392 | 2555 |
| 2190 | 2292 | 2393 | 2557 |
| 2197 | 2314 | 2394 | 2559 |
| 2199 | 2315 | 2399 | 2561 |
| 2201 | 2323 | 2404 | 2564 |
| 2203 | 2324 | 2409 | 2565 |
| 2206 | 2328 | 2410 | 2567 |
| 2210 | 2331 | 2411 | 2569 |
| 2212 | 2334 | 2412 | 2570 |
| 2213 | 2337 | 2418 | 2571 |
| 2214 | 2343 | 2419 | 2572 |
| 2217 | 2344 | 2420 | 2574 |
| 2218 | 2345 | 2421 | 2575 |
| 2219 | 2346 | 2429 | 2576 |
| 2222 | 2347 | 2446 | 2579 |
| 2223 | 2349 | 2447 | 2582 |
| 2224 | 2350 | 2448 | 2583 |
| 2225 | 2351 | 2449 | 2585 |
| 2227 | 2352 | 2452 | 2586 |
| 2228 | 2353 | 2454 | 2588 |
| 2229 | 2355 | 2456 | 2589 |
| 2230 | 2357 | 2458 | 2591 |
| 2232 | 2358 | 2460 | 2592 |
| 2234 | 2359 | 2462 | 2594 |

| | | |
|---|---|---|
| 2595 | 2690A | 2935A |
| 2598 | 2702A | |
| 2600 | 2711A | |
| 2602 | 2717A | |
| 2603 | 2721A | |
| 2605 | 2722A | |
| 2607 | 2723A | |
| 2608A | 2724A | |
| 2609A | 2725A | |
| 2616A | 2735A | |
| 2619A | 2740A | |
| 2620A | 2743A | |
| 2621A | 2744A | |
| 2626A | 2745A | |
| 2627A | 2746A | |
| 2628A | 2748A | |
| 2629A | 2749A | |
| 2632A | 2753A | |
| 2634A | 2754A | |
| 2636A | 2766A | |
| 2642A | 2779A | |
| 2643A | 2780A | |
| 2644A | 2806A | |
| 2646A | 2807A | |
| 2650A | 2831A | |
| 2652A | 2832A | |
| 2653A | 2833A | |
| 2656A | 2835A | |
| 2659A | 2840A | |
| 2661A | 2843A | |
| 2662A | 2845A | |
| 2663A | 2849A | |
| 2664A | 2857A | |
| 2665A | 2878A | |
| 2667A | 2881A | |
| 2668A | 2897A | |
| 2669A | 2899A | |
| 2670A | 2900A | |
| 2671A | 2903A | |
| 2672A | 2906A | |
| 2673A | 2907A | |
| 2675A | 2908A | |
| 2676A | 2909A | |
| 2681A | 2911A | |
| 2682A | 2913A | |
| 2683A | 2918A | |
| 2688A | 2919A | |
| 2689A | 2934A | |